Matthew L. Sharp, Esq.
Nevada Bar No. 4746
**MATTHEW L. SHARP, LTD.**
432 Ridge St.
Reno, NV 89501
Phone: (775) 324-1500
matt@mattsharplaw.com

*Attorneys for Plaintiff*

[***Additional Counsel Listed Below***]

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MEHMET ALI ALBAYRAK, Derivatively on Behalf of SPECTRUM CORP.,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH W. TURGEON, KURT A. GUSTAFSON, FRANCOIS LEBEL, WILLIAM L. ASHTON, NORA E. BRENNAN, SETH H.Z. FISCHER, JUHYUN LIM, THOMAS J. RIGA, JEFFREY L. VACIRCA, DOLATRAI M. VYAS, and BERNICE R. WELLES,<br><br>Defendants,<br><br>And,<br><br>SPECTRUM PHARMACEUTICALS INC.,<br><br>Nominal Defendant. | Case No.:<br><br>**SHAREHOLDER DERIVATIVE COMPLAINT AND DEMAND FOR JURY** |

Plaintiff Mehmet Ali Albayrak ("Plaintiff"), by and through his undersigned counsel, derivatively on behalf of Nominal Defendant Spectrum Pharmaceuticals, Inc. ("Spectrum" or the "Company"), submits this Shareholder Derivative Complaint (the

"Complaint"). Plaintiff's allegations are based upon his personal knowledge as to himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by Spectrum with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

## NATURE OF THE ACTION

1. This is a shareholder derivative action brought in the right, and for the benefit, of Spectrum against certain of its officers and directors seeking to remedy Defendants' (as defined below) breach of fiduciary duties, causing substantial harm to Spectrum.

## JURISDICTION

2. This Court has jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Section 21D of the Exchange Act (15 U.S.C. § 78u-4(f)). Plaintiff's claims also raise a federal question pertaining to the claims made in the securities class actions entitled *Luo v. Spectrum Pharmaceuticals, Inc. et al.*, Case 2:21-cv-01612 (D. Nevada) (the "Securities Class Action") based on violations of the Exchange Act.

3. Venue is proper in this Court because the Company maintains its executive office in this county, a substantial portion of the transactions and wrongs complained of herein occurred in this county, and Defendants have received substantial compensation in this county by doing business here and engaging in numerous activities that had an effect in this county.

## THE PARTIES

**Plaintiff**

4. Plaintiff is, and was at relevant times, a shareholder of Spectrum as of August 2012. Plaintiff will fairly and adequately represent the interests of the

shareholders in enforcing the rights of the corporation. Plaintiff currently holds Spectrum shares as of the filing of this Complaint.

**Nominal Defendant**

5. ***Nominal Defendant Spectrum*** is a Delaware corporation with principal executive offices located at 11500 South Eastern Avenue, Suite 240, Henderson, Nevada 89052.

**Officer Defendants**

6. ***Defendant Joseph W. Turgeon*** ("Turgeon") was the Company's President and Chief Executive Officer ("CEO") from December 2017 to December 2021. Defendant Turgeon is named as a defendant in the Securities Class Action. In his role as President and CEO for fiscal years 2018, 2019, and 2020, Defendant Turgeon received $4,722,227, $5,697,232, and $3,713,218 in total compensation, respectively.

7. ***Defendant Kurt A. Gustafson*** ("Gustafson") was the Company's Executive Vice President and Chief Financial Officer ("CFO") from June 2013 until March 2022. Defendant Gustafson is named as a defendant in Securities Class Action. In his role as Executive Vice President and CFO for fiscal years 2018, 2019, and 2020, Defendant Gustafson received $2,587,373, $3,122,820, and $2,090,952 in total compensation, respectively.

8. ***Defendant Francois Lebel*** ("Lebel") has been the Company's Executive Vice President and Chief Medical Officer since November 2018. Defendant Lebel is named as a defendant in the Securities Class Action. In his role as Executive Vice President and Chief Medical Officer for fiscal years 2019 and 2020, Defendant Lebel received $2,666,773 and $2,224,518 in total compensation, respectively.

9. Defendants Turgeon, Gustafson, and Lebel are collectively referred to herein as the "Officer Defendants."

**Director Defendants**

10. ***Defendant William L. Ashton*** ("Ashton") has been the Company's Chairman of the Board of Directors ("Board") since June 2019 and a member of the

Board since February 2018. In his role as a director of the Company for fiscal years 2018, 2019, and 2020, Defendant Ashton received $544,497, $272,115, and $315,167 in total compensation, respectively.

11. ***Defendant Nora E. Brennan*** ("Brennan") has been a member of the Company's Board since December 2020. In her role as a director of the Company for fiscal year 2020, Defendant Brennan received $211,106 in total compensation.

12. ***Defendant Seth H.Z. Fischer*** ("Fischer") has been a member of the Company's Board since April 2020. In his role as a director of the Company for fiscal year 2020, Defendant Fischer received $265,882 in total compensation.

13. ***Defendant Juhyun Lim*** ("Lim") has been a member of the Company's Board since March 2022.

14. ***Defendant Thomas J. Riga*** ("Riga") has been the Company's President, CEO, and member of the Board since January 2022. Previously, Defendant Riga served as the Company's Chief Commercial and Chief Operating Officer. In his role as the Company's President and CEO, Defendant Riga stands to receive an annual base salary of $650,000 and will be entitled to an annual discretionary bonus of up to 70% of his base salary, as determined by the Board. In addition, Defendant Riga will receive an equity award of approximately $3,200,000.

15. ***Defendant Jeffrey L. Vacirca*** ("Vacirca") has been a member of the Company's Board since November 2018. In his role as a director of the Company for fiscal years 2018, 2019, and 2020, Defendant Vacirca received $213,935, $262,115, and $301,834 in total compensation, respectively.

16. ***Defendant Dolatrai M. Vyas*** ("Vyas") has been a member of the Company's Board since June 2013. In his role as a director of the Company for fiscal years 2018, 2019, and 2020, Defendant Dolatrai received $458,218, $257,115, and $290,167 in total compensation, respectively.

17. ***Defendant Bernice R. Welles*** ("Welles") has been a member of the Company's Board since June 2018. In her role as a director of the Company for fiscal

years 2018, 2019, and 2020, Defendant Welles received $420,718, $267,115, and $300,167 in total compensation, respectively.

18. Defendants Ashton, Brennan, Fischer, Riga, Vacirca, Vyas, and Welles are collectively referred to herein as the "Director Defendants."

19. The Officer Defendants and Director Defendants are collectively referred to herein as "Defendants."

**CODE OF BUSINESS CONDUCT AND ETHICS**

20. As members of the Spectrum Board, the Director Defendants were held to the highest standards of honesty and integrity and charged with overseeing the Company's business practices and policies and of assuring the integrity of its financial and business records.

21. The conduct of the Director Defendants and Officer Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Spectrum, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its investors that they were aware posed a risk of serious injury to the Company.

**DUTIES OF THE DEFENDANTS**

22. By reason of their positions as officers and/or directors of the Company, and because of their ability to control the business and corporate affairs of Spectrum, the Director Defendants and Officer Defendants owed Spectrum and its investors the fiduciary obligations of trust, loyalty, and good faith. The obligations required the Director Defendants and Officer Defendants to use their utmost abilities to control and manage Spectrum in an honest and lawful manner. The Director Defendants and Officer Defendants were and are required to act in furtherance of the best interests of Spectrum and its investors.

23. Each director of the Company owes to Spectrum and its investors the fiduciary duty to exercise loyalty, good faith, and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets. In

addition, as officers and/or directors of a publicly held company, the Director Defendants and Officer Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations, finances, and financial condition, as well as present and future business prospects, so that the market price of the Company's stock would be based on truthful and accurate information.

24. To discharge their duties, the officers and directors of Spectrum were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls governing the affairs of the Company. By virtue of such duties, the officers and directors of Spectrum were required to, among other things:

(a) ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(b) conduct the affairs of the Company in an efficient, businesslike manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c) properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's business prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(d) remain informed as to how Spectrum conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiries in connection therewith, take steps to correct such conditions or practices, and make such disclosures as necessary to comply with federal and state securities laws;

(e) ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state and local laws, and rules and regulations; and

(f) ensure that all decisions were the product of independent business judgment and not the result of outside influences or entrenchment motives.

25. Each Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Director Defendants and Officer Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Spectrum, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Director Defendants and Officer Defendants were aware, or should have been aware, posed a risk of serious injury to the Company.

26. The Director Defendants and Officer Defendants breached their duties of loyalty and good faith by causing the Company to issue false and misleading statements concerning the financial condition of the Company. As a result, Spectrum has expended, and will continue to expend, significant sums of money related to investigations and lawsuits.

## BACKGROUND

27. Spectrum is a biopharmaceutical company that develops and commercializes oncology and hematology drug products. The Company's products under development include, among others, ROLONTIS (eflapegrastim), a novel long-acting granulocyte colony-stimulating factor for chemotherapy-induced neutropenia.

## FACTS

28. On December 27, 2018, Defendants caused the Company to issue a press release, reporting its submission of the ROLONTIS BLA with the FDA. That release

stated:

> "ROLONTIS is an important and significant future growth driver for our company," said Joe Turgeon, President and CEO of Spectrum Pharmaceuticals. "Today's milestone brings us one step closer to bringing the first novel G-CSF to healthcare providers in over 15 years in a large market that is familiar to Spectrum."
>
> The BLA for ROLONTIS is supported by data from two identically designed Phase 3 clinical trials, ADVANCE and RECOVER, which evaluated the safety and efficacy of ROLONTIS in 643 early-stage breast cancer patients for the treatment of neutropenia due to myelosuppressive cytoxic chemotherapy. The study ADVANCE was conducted under a special protocol assessment (SPA) with the Agency. In both studies, ROLONTIS demonstrated the pre-specified hypothesis of non-inferiority (NI) in Duration of Severe Neutropenia (DSN) and a similar safety profile to pegfilgrastim. ROLONTIS also demonstrated non-inferiority to pegfilgrastim in the DSN across all 4 cycles (all NI $p<0.0001$) in both studies.

29. On February 28, 2019, Defendants caused the Company to file an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the year ended December 31, 2018 (the "2018 Form 10-K"). The 2018 Form 10-K stated:

> In December 2015, we reached agreement with the FDA regarding our Phase 3 Special Protocol Assessment, or SPA, for ROLONTIS. This pivotal Phase 3 study (ADVANCE Study, or SPI-GCF-301) was initiated in the first quarter of 2016 to evaluate ROLONTIS as a treatment for chemotherapy-induced neutropenia. We announced in February 2018 that the top line results of this study met the non-inferiority of ROLONTIS to pegfilgrastim endpoint in the Duration of Severe Neutropenia, or DSN, across all four cycles (all $p<0.0001$). We initiated a second pivotal Phase 3 study (RECOVER Study, or SPI-GCF-302) and announced in June 2018, that it had also met its primary efficacy endpoint of non-inferiority in DSN between ROLONTIS and pegfilgrastim.
>
> We submitted our Biologics License Application ("BLA") with the FDA in late December 2018. Due to the recent federal government shutdown, the BLA was officially received by the FDA on January 28, 2019. Once this BLA is accepted by the FDA, our Prescription Drug User Fee Act date is expected to be set for 10 months thereafter.

30. Appended to the 2018 Form 10-K as exhibits were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Turgeon and Gustafson, attesting that "the information contained in the [2018 Form 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

31. In connection with the 2018 Form 10-K, Defendants caused the Company to issue a press release entitled *Spectrum Pharmaceuticals Reports Fourth Quarter 2018 and Full Year 2018 Financial Results and Pipeline Update*. The press release stated:

> "2018 was a very productive year for Spectrum in which our two promising pipeline products significantly progressed in clinical development," said Joe Turgeon, President and CEO of Spectrum Pharmaceuticals. "We begin 2019 with great momentum after meeting the enrollment target for the first cohort in our pivotal poziotinib study and submitting the BLA for ROLONTIS to the FDA at the end of 2018. In 2019, we are laser-focused on continuing to develop our two late-stage products, poziotinib and ROLONTIS, and looking for new opportunities that build upon these assets."

32. That same day, the Company hosted an earnings call with investors and analysts to discuss its Q4 and full year 2018 results (the "Q4 2018 Earnings Call"). During the scripted portion of the Q4 2018 Earnings Call, Defendant Turgeon stated:

> 2018 was a very productive year for Spectrum and my first full year as the CEO and as I reflect on the year there are three major developments in 2018 that I'm very proud of and really defines who we are today. The most significant development in 2018 was the advancement of our pipeline assets, poziotinib and ROLONTIS. 2018 was data rich for both poziotinib and ROLONTIS and the data strengthened our confidence in both of these assets.
>
> ***
>
> For ROLONTIS data from two Phase 3 trials demonstrated that it was noninferior and the standard of care with a similar safety profile. We submitted a BLA with the FDA late in December 2018.
>
> ***
>
> As we look at 2019, poziotinib and ROLONTIS will be our primary focus while we're also exploring opportunities beyond our existing pipeline. Additionally, when asked a question regarding the Company's cash guidance, Defendant Gustafson responded, "[s]o I think as we take a look at our forecast we feel great about the ROLONTIS data and the BLA filing. So our forecast does include a launch of ROLONTIS sometime in 2020 and so that that is indeed included in that guidance."

33. On March 15, 2019, Defendants caused the Company to issue a press release reporting its voluntary withdrawal of the ROLONTIS BLA. The press release stated:

> [D]ue to the [FDA's] request for additional manufacturing-related information for ROLONTIS, the company has voluntarily withdrawn [the

> ROLONTIS BLA]. Spectrum plans to resubmit a revised BLA as soon as possible.
>
> The FDA did not cite concerns related to the pre-clinical and clinical modules of the BLA or the need for additional clinical studies. Spectrum's decision to withdraw the BLA was the result of the company needing more time to provide certain additional manufacturing-related information, which was required before March 29, 2019, the day that the FDA's initial 60-day review period ends.
>
> "We are continuing to have productive discussions with the FDA and will deliver the additional information needed to support the application," said Joe Turgeon, President and CEO of Spectrum Pharmaceuticals. "We remain confident in the ROLONTIS program and look forward to a successful resubmission and its ultimate approval."

34. On May 9, 2019, the Company hosted an earnings call with investors and analysts to discuss the Company's Q1 2019 results (the "Q1 2019 Earnings Call"). During the scripted portion of the Q1 2019 Earnings Call, Defendant Turgeon stated: "[w]e also continue to advance the development of our late stage assets poziotinib and ROLONTIS, the cornerstones of our Company," and "[r]egarding ROLONTIS, we continue to have productive discussions with the FDA and plan to meet with the agency in the near term. We are being thorough and deliberate in our updating our file, do we hope it happen to the FDA as soon as it's ready. We look forward to a successful submission and it's optimal approval."

35. On August 8, 2019, Defendants caused the Company to issue a press release reporting the Company's Q2 2019 financial results and pipeline update. The press release stated:

> "We've made significant progress on our pipeline in the last few months," said Joe Turgeon, President and CEO of Spectrum Pharmaceuticals. "Most notably, we completed enrollment in our first two poziotinib cohorts in the ZENITH20 study and expect to see results from cohort 1 in the fourth quarter. Based on strong science, we've expanded the poziotinib development program to include additional areas of high unmet medical need in lung cancer. We also had a productive meeting with the FDA and expect to submit the ROLONTIS BLA in the fourth quarter."
>
> * * *
>
> ROLONTIS® (eflapegrastim), a novel long-acting GCSF:
>
> • Integrated data from both Phase 3 ROLONTIS clinical trials with 643 patients were presented in a poster session at American Society of

> Clinical Oncology 2019 annual meeting. o The analysis found that integrated efficacy and safety data from the two identically designed Phase 3 trials - ADVANCE and RECOVER - were consistent with results from the individual trials, demonstrating that ROLONTIS was non-inferior to pegfilgrastim in the reduction of duration of severe neutropenia (DSN) in all four cycles of treatment.
>
> • Spectrum met with the FDA and expects to submit the ROLONTIS BLA in the fourth quarter of 2019.

36. That same day, the Company hosted an earnings call with investors and analysts to discuss the Company's Q2 2019 results (the "Q2 2019 Earnings Call"). During the scripted portion of the Q2 2019 Earnings Call, Defendant Turgeon stated:

> Regarding ROLONTIS, our late stage asset to use in chemotherapy-induced neutropenia, we recently had a productive meeting with the FDA and plan to submit the BLA in the fourth quarter. I want to remind you that we have very strong efficacy and safety data coming out of two large Phase III trials.
>
> If approved, this product will compete in a multibillion dollar market that I and many members of our management team have a deep expertise in. We look forward to successful submission and its ultimate approval. Also during the scripted portion of the Q2 2019 Earnings call, Defendant Lebel stated, in relevant part:
>
> Now, shifting to ROLONTIS, at ASCO, we presented a poster integrating the data from both of our pivotal phase three ROLONTIS clinical trials, which included a total of 643 patients. The integrated analysis of efficiency and safety was consistent with results from the individual studies demonstrating that ROLONTIS was non-inferior to pegfilgrastim in the reduction of duration of severe neutropenia. Regarding our BLA file, we recently had a productive meeting with the FDA to further discuss their expectation around module three, which is the module focused on manufacturing. Based on the outcome of that meeting, we expect to submit the BLA in the fourth quarter of this year.
>
> Finally, in answering a question regarding the "gating factors remaining prior to submitting the [ROLONTIS] BLA," Defendant Turgeon replied, in relevant part, "[l]isten, we are aligned with the FDA. We had our meeting, we got aligned. We're being thorough, we're being deliberate and we're going to filing in the fourth quarter as we said. The questions that we had answered, we're in module three, which is in the SCMC section only. And again, we're being like I said, thorough and deliberate and plan on filing this in the fourth quarter."

37. On October 24, 2019, Defendants caused the Company to issue a press release reporting its submission of an updated ROLONTIS BLA with the FDA. That press release stated:

> The BLA for ROLONTIS is supported by data from two identically designed Phase 3 clinical trials, ADVANCE and RECOVER, which evaluated the safety and efficacy of ROLONTIS in 643 early-stage breast cancer patients for the treatment of neutropenia due to myelosuppressive chemotherapy. In both studies, ROLONTIS demonstrated the pre-specified hypothesis of non-inferiority (NI) in Duration of Severe Neutropenia (DSN) and a similar safety profile to pegfilgrastim. ROLONTIS also demonstrated non-inferiority to pegfilgrastim in the DSN across all 4 cycles (all NI p<0.0001) in both studies.
>
> "We have submitted a robust package to the FDA that incorporates strong clinical data and addresses previously communicated FDA requests relating to manufacturing processes," said Joe Turgeon, President and CEO of Spectrum. "ROLONTIS could be the first novel G-CSF available to healthcare providers in over 15 years and, if approved, we are looking forward to competing in this multibillion-dollar market."
>
> In March 2019, Spectrum voluntarily withdrew the ROLONTIS BLA that it filed with the FDA in 2018. The updated BLA filed today includes additional information in the Chemistry, Manufacturing and Controls (CMC) section.

38. On November 7, 2019, Defendants caused the Company to issue a press release reporting the Company's Q3 2019 financial results. The press release stated:

> "Spectrum has an expanding pipeline, significant near-term milestones, solid capitalization and a highly focused team," said Joe Turgeon, President and CEO, Spectrum Pharmaceuticals. "In December, we look forward to results from Cohort 1 of our ZENITH20 study investigating poziotinib in lung cancer patients with hard-to-treat mutations. We recently submitted our BLA for ROLONTIS to the FDA, a key milestone, as we continue to execute on our strategic priorities."

39. That same day, the Company hosted an earnings call with investors and analysts to discuss the Company's Q3 2019 results (the "Q3 2019 Earnings Call"). During the scripted portion of the Q3 2019 Earnings Call, Defendant Turgeon stated: "ROLONTIS is our late-stage drug being developed for the treatment of chemotherapy-induced neutropenia. As you recall, we voluntarily withdrew our BLA application earlier this year. Since then, we worked closely with the FDA and recently submitted a robust package. We look forward to competing in this market."

40. Also during the scripted portion of the Q3 2019 Earnings Call, Defendant Lebel stated:

> Now shifting to ROLONTIS. ROLONTIS is a novel long-acting GCSF seeking an indication for the treatment of neutropenia in patient receiving myelosuppressive cancer therapy. On October 24, we submitted an

> expanded BLA to the FDA. The withdrawal 7 months ago was driven by Module 3 or the CMC section. Since then, we've had productive dialogue with the FDA. We implemented their guidance, provided additional data and rewrote and reorganized certain sections of the file resulting in a strong submission.
>
> As a reminder, our BLA is based on robust clinical data from 2 large pivotal, independent, randomized controlled trials. In both studies, ROLONTIS met the pre-specified end point of non-inferiority in duration of severe neutropenia and met all secondary end points. The safety profile was similar to pegfilgrastim.

41. On December 26, 2019, Defendants caused the Company to issue a press release providing a pipeline update on the Company's late stage programs. The press release stated:

> The company also announced today that the FDA has accepted for review the BLA for ROLONTIS for the treatment of chemotherapy-induced neutropenia. The [Prescription Drug User Fee Act] target action date for the ROLONTIS BLA has been set for October 24, 2020.
>
> "If approved, ROLONTIS could be the first novel granulocyte colonystimulating factor (G-CSF) available to healthcare providers in over 15 years," said Joe Turgeon. "We have confidence in the future of ROLONTIS and are looking forward to potentially competing in this multibillion-dollar market."
>
> The BLA for ROLONTIS is supported by data from two successful large pivotal Phase 3 clinical trials, ADVANCE (conducted under a SPA) and RECOVER. These trials evaluated the safety and efficacy of ROLONTIS in a total of 643 early-stage breast cancer patients for the treatment of neutropenia due to myelosuppressive chemotherapy. In both trials, ROLONTIS demonstrated the pre-specified hypothesis of non-inferiority (NI) in duration of severe neutropenia (DSN) and a similar safety profile to pegfilgrastim. ROLONTIS also demonstrated non-inferiority (NI) to pegfilgrastim in the DSN across all 4 cycles of chemotherapy (all NI $p<0.0001$) in both trials.

42. On February 27, 2020, Defendants caused the Company to issue a press release reporting the Company's Q4 and full year 2019 financial results and pipeline update. The press release stated:

> ROLONTIS is in active review by the FDA and we are preparing to launch shortly following approval," said Joe Turgeon, President and CEO, Spectrum Pharmaceuticals. "We believe this market represents a significant commercial opportunity and our prelaunch activities are well underway. We have a podium presentation on poziotinib in a few short weeks, we have taken steps to adjust our strategy and we have multiple data catalysts in 2020. I look forward to updating you on our progress throughout the year."

43. That same day, the Company hosted an earnings call with investors and analysts to discuss the Company's Q4 and full year 2019 results (the "Q4 2019 Earnings Call"). During the scripted portion of the Q4 2019 Earnings Call, Defendant Turgeon stated:

> ROLONTIS is our late stage drug being developed for the treatment of chemotherapy-induced neutropenia. We submitted our BLA in October of 2019 and it was accepted for filing with the PDUFA date of October 22, 2020. If approved, ROLONTIS could be the first novel granulocyte-colony stimulating factor available to healthcare providers in over 15 years. We have confidence in the future of ROLONTIS and are looking forward to potentially competing in this multibillion dollar market.

44. On March 2, 2020, Defendants caused the Company to file an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the year ended December 31, 2019 (the "2019 Form 10-K"). The 2019 Form 10-K listed as one of the Company's recent highlights of its business:

> ROLONTIS, a novel long-acting G-CSF:
>
> We submitted our updated BLA for ROLONTIS with the FDA on October 24, 2019 due to the FDA's request for additional information in the Chemistry, Manufacturing, and Controls section. The updated BLA was accepted by the FDA for review on December 20, 2019. Our BLA is supported by data from two identically designed Phase 3 clinical trials, ADVANCE and RECOVER, which evaluated the safety and efficacy of ROLONTIS in 643 early-stage breast cancer patients for the treatment of neutropenia due to myelosuppressive chemotherapy. Our PDUFA date for the potential approval of ROLONTIS by the FDA has been set for October 24, 2020.
>
> In October 2019, integrated results from ADVANCE and RECOVER were presented during a poster session at the 2019 Meeting of the American Society of Clinical Oncology (ASCO) Symposium in San Francisco. The integrated efficacy and safety data from both trials were consistent with results from the individual trials, demonstrating that ROLONTIS was noninferior to pegfilgrastim in the reduction of duration of severe neutropenia in all four cycles of treatment. The integrated data also demonstrated that eflapegrastim provided an absolute risk reduction of severe neutropenia of 6.5% compared to pegfilgrastim in Cycle 1.

45. Appended to the 2019 Form 10-K as exhibits were signed certifications pursuant to SOX by Defendants Turgeon and Gustafson, attesting that "the information contained in the [2019 Form 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

46. On April 30, 2020, Defendants caused the Company to issue a press release entitled *Spectrum Pharmaceuticals Initiates Same Day Dosing Clinical Trial for ROLONTIS® (eflapegrastim)*. The press release stated:

> Spectrum [. . .] today announced dosing of the first patient in a clinical trial to evaluate the administration of ROLONTISon the same day as chemotherapy. The trial will evaluate the duration of severe neutropenia when administered at three different time points on the same day following standard chemotherapy in patients with early stage breast cancer. ROLONTISis an investigational drug not approved by the U.S. Food and Drug Administration (FDA) and the BLA is currently under active review by the agency for the treatment of chemotherapy induced neutropenia with a PDUFA date of October 24, 2020.
>
> "This study exemplifies our commitment to unlocking the full potential of ROLONTIS, the first novel biologic positioned to enter the G-CSF market since 2001. A same day dosing option would be a unique and meaningful addition to the G-CSF category," said Joe Turgeon, President and CEO of Spectrum Pharmaceuticals. "We will continue to follow the science and explore ways to add value to patients and health care providers. The initiation of this study, despite the pandemic, highlights investigator's interest and our team's dedication."

47. On May 7, 2020, Defendants caused the Company to issue a press release reporting the Company's Q1 2020 financial results and pipeline update. The press release stated:

> "The progress in our development pipeline speaks to the investigator interest and the commitment of our team during these unprecedented times," said Joe Turgeon, President and CEO, Spectrum Pharmaceuticals.
>
> "The PDUFA date for ROLONTIS remains October 24, 2020 and our updated poziotinib strategy is well under way. We continue to drive the business forward and remain focused on achieving our milestones this year."

48. That same day, the Company hosted an earnings call with investors and analysts to discuss the Company's Q1 2020 results (the "Q1 2020 Earnings Call"). During the scripted portion of the Q1 2020 Earnings Call, Defendant Turgeon stated:

> ROLONTIS is our late-stage drug product candidate that's currently under active review at the FDA for the treatment of chemotherapy-induced neutropenia with a PDUFA date of October 24, 2020. If approved, ROLONTIS could be the first novel granulocyte-colony stimulating factor available to healthcare providers in over 15 years. Our launch preparations for ROLONTIS are actively underway. As the PDUFA date approaches we

> have already put key leadership personnel in place and will accelerate our commercial build out as we approach the launch date.
>
> We're planning to launch with a lean and effective commercial infrastructure to maximize the impact of ROLONTIS. We're closely monitoring the evolving market dynamics and believe that launching this novel asset will benefit patients, our customers and our shareholders. We're looking forward to its potential approval into competing in this multi-billion dollar growth factor market.

49. Additionally, when asked about the likelihood of the ROLANTIS Phase 3 clinical trials being accepted by the FDA, Defendant Turgeon responded:

> The two trials we have, number one, there are over 600 patients – 643 patients as I recall - to Phase 3. This is under a SPA, which is a special protocol assessment and what that means, George, is that we worked with the agency, the FDA to develop the actual protocol, which they agreed. We were in tandem with them. They agreed with the protocol. If you have seen the data on both separate Phase 3 or in a presentation of combining the two trials together, the results were outstanding. We hit all our primary and secondary endpoints. Actually, it's what's called a non-inferiority trial. In other words, all we had to demonstrate is we were non-inferior to the standard of care which is the drug that's on the market today, and we certainly did that. You can argue in the first cycle, we actually showed some superiority although it's a non-inferiority trial.
>
> So we feel really good about the data that we've submitted. All I can tell you, it's under active review as we speak. The PDUFA date, which means the date of approval is October 24. That still stands despite the pandemic.
>
> We're on active review and active work with the agency, so we're hoping that we can get an approval this year.

50. On August 10, 2020, Defendants caused the Company to issue a press release reporting the Company's Q2 2020 financial results and corporate update. The press release stated:

> "The recently announced positive results from Cohort 2 are a meaningful development for patients with NSCLC HER2 exon 20 insertion mutations for which there is no approved therapy," said Joe Turgeon, President and CEO, Spectrum Pharmaceuticals. "We are in the process of requesting a pre-NDA meeting with the FDA and look forward to reviewing this data with the agency. In addition, the BLA for ROLONTIS is under active FDA review with a PDUFA date of October 24, 2020. We are in a strong capital position to fund our ongoing development and commercialization of our late stage assets."

51. That same day, the Company hosted an earnings call with investors and analysts to discuss the Company's Q2 2020 results (the "Q2 2020 Earnings Call"). During the scripted portion of the Q2 2020 Earnings Call, Defendant Turgeon stated:

> ROLONTIS our most advanced program is under active review at the FDA for the treatment of chemotherapy-induced neutropenia with a PDUFA date of October 24, 2020. If approved, ROLONTIS could be the first novel granulocyte-colony stimulating factor available to healthcare providers in over 15 years.
>
> As the PDUFA date approaches, our launch preparations for ROLONTIS are accelerating. I look forward to getting back into this market, an area I know well personally, and the potential of competing in this multi-billion dollar growth factor market.
>
> ***
>
> I think you can see from everyone's remarks that Spectrum continues to make outstanding progress on our pipeline and our commercial build-out in anticipation of potential approval and launch for ROLONTIS.

52. On October 26, 2020, Defendants caused the Company to issue a press release reporting that the FDA was deferring its action on the ROLONTIS BLA. The press release stated:

> Spectrum [. . .] today announced that an inspection of the Hanmi Bioplant in South Korea is required before the FDA can approve the company's Biologics License Application (BLA) for ROLONTIS. The FDA was unable to conduct an inspection during the current review cycle due to restrictions on travel related to the COVID-19 pandemic. Therefore, the FDA is deferring action on the application until an inspection can be completed. The company will continue to work actively with the FDA to define an approach for scheduling the required inspection. Spectrum has confirmed with the FDA that this is not a Complete Response Letter.
>
> "We are actively working with the FDA to find a way to expedite the plant inspection," said Joe Turgeon, President and CEO, Spectrum Pharmaceuticals. "The manufacturing facility is ready for inspection and we are eager to assist the FDA in completing their assessment as soon as possible."

53. On November 4, 2020, Defendants caused the Company to issue a press release reporting the Company's Q3 2020 financial results and corporate update. The press release stated:

> "The third quarter was marked by significant progress in our drug development programs and a strengthened financial position," said Joe Turgeon, President and CEO, Spectrum Pharmaceuticals. "Our team is preparing for the upcoming pre-NDA meeting with the FDA for poziotinib and actively working to obtain an approval for ROLONTIS as soon as possible."
>
> ***

> ***ROLONTIS (eflapegrastim), a novel long-acting G-CSF***
>
> The FDA deferred its action on the BLA for ROLONTIS, due to an inability to inspect the Hanmi Bioplant in South Korea citing travel restrictions related to the COVID-19 pandemic. Spectrum has confirmed with the FDA that the deferral is not a Complete Response Letter (CRL). The company is actively working to find a way to expedite the plant inspection.

54. That same day, the Company hosted an earnings call with investors and analysts to discuss the Company's Q3 2020 results (the "Q3 2020 Earnings Call"). During the scripted portion of the Q3 2020 Earnings Call, Defendant Turgeon stated:

> We have answered all the inquiries from the FDA, and we're not aware of any outstanding items other than the inspection. We will be prudent with our financial resources and have gated certain activities pending further feedback or action from the FDA. Regarding the ROLONTIS plant inspection, our partner Hanmi Pharmaceuticals is a well-established global biopharmaceutical player with a world-class manufacturing facility.
>
> Hanmi is the second largest pharmaceutical company in Korea, behind only Samsung. They're prepared for the inspection and willing to be accommodative to the needs of the FDA as it strives to meet the regulatory obligations. They've been a great partner and are working in tandem which Spectrum to obtain an approval for ROLONTIS as soon as it is possible. I'm real confident in our ability to meet our corporate objectives in advance of programs with the aspiration of bringing new treatments to the patients with cancer, who needed it.

55. Further, when asked a question regarding mock inspections of the ROLANTIS manufacturing facility, Defendant Lebel responded:

> So, as we've indicated in my remark, and [Defendant Turgeon's], the – look to our knowledge, right, we have received during the review of this file many questions, we believe that we've answered all of them. And that the FDA was satisfied. But of course, we don't know that until, you know, they approved this drug. To our knowledge, the only thing outstanding right now, is the inspection of our manufacturing, a main manufacturing plant.

56. In response to that same question, Defendant Turgeon stated:

> And I want to stress another thing, we are absolutely ready for this inspection. We are ready for a long time, we welcome it. Matter of fact, the third part of your question was the mock inspections, was it required? They're certainly not required by the agency. We do that to make sure we're ready. And I can tell you, we have Spectrum boots on the ground there, we have Hanmi, which I mentioned, is a world-class manufacturer with a world-class plant. Their people are ready, and we work very closely with them with these mock inspections.

> And we have a third leg to the stool, we have outside experts, we've hired to run these, not only run these mock inspections, but also help the readiness. And these are people who have done this for a living. They do this – they know exactly what the FDA is looking for in an inspection. So, we feel we're ready. We welcome the inspection already, you know, we can't wait.

57. Finally, when asked what the "cadence of discussions with the FDA" was at that moment, Defendant Turgeon responded:

> They have the authority to do things. So, you know, like in anything else, you contact the agency, they have so much time to get back to you. Kind of that's all laid out. And then we you know, we certainly can have discussions on what's next, how can we work with you, we're willing to do whatever it takes. As [Defendant Lebel] said, just yesterday, they issued, you can see movement on their part for the first time in this because this is new to them.
>
> And they issued the statement on moving forward. Europe's doing it, as you heard already.
>
> So I think they're going to have to just start moving forward. And all I'll tell you is, we will do anything we can to, I'll use the word nudge them. You know, you have to do it properly, but we every right to talk to them, we're ready to go and try and figure out how to do this as quickly as possible.

58. On March 16, 2021, Defendants caused the Company to issue a press release providing an update on the ROLONTIS pre-approval inspection. The press release stated:

> Spectrum [. . .] today announced that the U.S. Food and Drug Administration (FDA) has scheduled the pre-approval inspection at the ROLONTIS® (eflapegrastim) manufacturing site in May 2021. In October 2020, the company received notification from the agency that it would defer its decision on the BLA because an inspection of the Hanmi Bioplant in South Korea could not be conducted during the review cycle due to restrictions on travel related to the COVID-19 pandemic.
>
> "I am thrilled that the FDA informed us that they will be conducting a preapproval inspection of the ROLONTIS manufacturing facility in May," said Joe Turgeon, President and CEO of Spectrum Pharmaceuticals. "We believe the pre-approval inspection marks the final step in the ROLONTIS review process."

59. On March 30, 2021, Defendants caused the Company to issue a press release reporting the Company's Q4 and full year 2020 financial results and pipeline update. The press release stated: "[. . .] we are delighted that the FDA has scheduled the

pre-approval inspection at the ROLONTIS manufacturing facility for May 2021. The company has made tremendous progress advancing our development programs and conducting our clinical trials, despite the challenges of the global pandemic. I am proud of our employees who demonstrated resiliency and creativity during these unprecedented times."

60. That same day, the Company hosted an earnings call with investors and analysts to discuss the Company's Q4 and full year 2020 results (the "Q4 2020 Earnings Call"). During the scripted portion of the Q4 2020 Earnings Call, Defendant Turgeon stated:

> Regarding ROLONTIS, the FDA is scheduled to perform the pre-approval inspection of our manufacturing facility in May. As you may recall, FDA informed us last year that it was deferring action on the BLA due to their inability to inspect the Hanmi Bioplant in South Korea as a result of travel restrictions related to the COVID-19 pandemic. Hanmi Pharmaceuticals is an experienced biopharmaceutical manufacturer with a world-class facility, and they are ready for this inspection. As a matter of fact, Hanmi has received recently approval for ROLONTIS in Korea, which further raises our confidence in their manufacturing readiness.
>
> ***
>
> I think you can see from everyone's remarks that Spectrum continues to make strong and steady progress on our pipeline. We look forward to the completion of the inspection of our ROLONTIS manufacturing facility.

61. Also, during the scripted portion of the Q4 2020 Earnings Call, Defendant Lebel stated:

> Our BLA for ROLONTIS is supported by robust clinical data from two large randomized clinical trials. Regarding the deferred action on our ROLONTIS filing that Joe mentioned, we believe with that we have answered satisfactorily all questions from the FDA related to the review of the BLA, and we believe that the inspection represents the final step in the review process. We and our partner Hanmi are ready for the FDA preapproval planned inspection that has been scheduled for May.

62. Finally, when asked to provide clarity on the "specific next steps after the [ROLANTIS facility] inspection," Defendant Lebel stated:

> So let me start with -- let's just say that when we got the deferral as opposed to a complete response CRL that usually indicates that the FDA is, they are pausing their review and the only step left to our knowledge is the inspection.

> We have had a lot of discussion with the FDA on all the other matters, and our understanding is that we have answered all their questions satisfactorily. So, we believe the inspection is fundamentally the last step. As to the timing following an inspection assuming that there's no issues, roughly I think a little more than a month, probably[.]

63. On March 31, 2021, Defendants caused the Company to file an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the year ended December 31, 2020 (the "2020 Form 10-K"). The 2020 Form 10-K listed as one of the recent highlights of the Company's business:

> ***ROLONTIS, a novel long-acting G-CSF:***
>
> We submitted our updated BLA for ROLONTIS to the FDA on October 24, 2019, which was accepted for review by the FDA on December 20, 2019. Our BLA is supported by data from two similarly designed Phase 3 clinical trials, ADVANCE and RECOVER, which evaluated the safety and efficacy of ROLONTIS in 643 early-stage breast cancer patients for the treatment of neutropenia due to myelosuppressive chemotherapy. On October 26, 2020, we announced that the FDA PDUFA target action date set for October 24, 2020 was deferred pending inspection of the Hanmi manufacturing facility in Korea due to COVID-19 related travel restrictions. In March 2021, the FDA scheduled the pre-approval inspection of the Hanmi manufacturing facility for May 2021.

64. Appended to the 2020 Form 10-K as exhibits were signed certifications pursuant to SOX by Defendants Turgeon and Gustafson, attesting that "the information contained in the [2020 Form 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

65. On May 13, 2021, Defendants caused the Company to issue a press release reporting the Company's Q1 2021 financial results and corporate update. The press release stated: "[w]e also look forward to the FDA's pre-approval inspection of the ROLONTIS manufacturing facility which has been scheduled for later this month," and "[t]he FDA's pre-approval inspection of the ROLONTIS manufacturing facility has been scheduled for later this month and pre-commercial preparation activities are underway."

66. That same day, the Company hosted an earnings call with investors and analysts to discuss the Company's Q1 2021 results (the "Q1 2021 Earnings Call"). During the scripted portion of the Q1 2021 Earnings Call, Defendant Turgeon stated:

> Now, regarding ROLONTIS, the FDA scheduled the pre-approval inspection of our manufacturing facility for later this month. We believe this inspection marks the final step in the approval process and that Hanmi's world class facility is ready for this inspection. We are making real progress on our two lead clinical programs with major catalysts expected in the coming months, including a launch and an NDA filing.
>
> ***
>
> Spectrum continues to make strong and steady progress on our development pipeline. We look forward to the completion of the inspection of our ROLONTIS manufacturing facility, which is planned to begin shortly.
>
> Also during the scripted portion of the Q1 2021 Earnings Call, Defendant Lebel stated, in relevant part, "[n]ow, let me shift to ROLONTIS. On the regulatory side, [Defendant Turgeon] has already updated you on the status of the pre-approval inspection and we remain confident that our preparation with our partner, Hanmi, should result in a positive outcome for this FDA plant inspection."

67. Further, when asked about the next steps after the pre-approval inspection of the ROLONTIS manufacturing plant, Defendant Turgeon responded: "[w]e're prepared for the inspection. We're looking forward to it. I can't give you an exact date, but I think the FDA would take a reasonable amount of time to get back to us once the inspection is done and we feel that's the last step. So without giving the exact time, I think it'll be a reasonable amount of time after the inspection is done."

68. The statements referenced above were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Defendants made false and/or misleading statements and/or failed to disclose that: (i) the ROLONTIS manufacturing facility maintained deficient controls and/or procedures; (ii) the foregoing deficiencies decreased the likelihood that the FDA would approve the ROLONTIS BLA in its current form; (iii) the Company had therefore materially overstated the ROLONTIS BLA's approval prospects; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

///

///

**THE TRUTH EMERGES**

69. On August 6, 2021, the Company announced receipt of a CRL from the FDA regarding the ROLONTIS BLA. The press release stated:

> The CRL cited deficiencies related to manufacturing and indicated that a reinspection of the Company's manufacturing facility will be necessary. The company is seeking further clarification from the FDA and plans to meet with the agency as soon as possible.
>
> "We are disappointed with this outcome and look forward to fully understanding the remediation timelines for the program," said Joe Turgeon, President and CEO of Spectrum Pharmaceuticals. "We continue to believe in ROLONTIS and plan to diligently complete the regulatory process to bring ROLONTIS to market."

70. On this news, the Company's stock price fell $0.70 per share, or 21.54%, to close at $2.55 per share on August 6, 2021.

**DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**

71. Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties and gross mismanagement by the Director Defendants.

72. Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights and has retained counsel competent and experienced in derivative litigation.

73. Plaintiff is a current owner of the Company stock and has continuously been an owner of Company stock during all times relevant to Defendants' wrongful course of conduct alleged herein. Plaintiff understands his obligation to hold stock throughout the duration of this action and is prepared to do so.

74. During the illegal and wrongful course of conduct at the Company and through the present, the Board consisted of the Director Defendants. Because of the facts set forth throughout this Complaint, demand on the Company Board to institute this action is not necessary because such a demand would have been a futile and useless act.

75. The Company Board is currently comprised of eight (8) members – Defendants Ashton, Brennan, Fischer, Lim, Riga, Vacirca, Vyas, and Welles. Thus, Plaintiff is required to show that a majority of the Demand Defendants, *i.e.*, four (4), cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.

76. Defendants face a substantial likelihood of liability in this action because they caused the Company to issue false and misleading statements concerning its financial results and future prospects. Because of their advisory, executive, managerial, and directorial positions with the Company, Defendants had knowledge of material non-public information regarding the Company and was directly involved in the operations of the Company at the highest levels.

77. Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

78. The Director Defendants (or at the very least a majority of them) cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action. For the reasons that follow, and for reasons detailed elsewhere in this Complaint, Plaintiff has not made (and should be excused from making) a pre-filing demand on the Board to initiate this action because making a demand would be a futile and useless act.

79. Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

80. Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and

are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

81. Because of their participation in the gross dereliction of fiduciary duties, and breaches of the duties of due care, good faith, and loyalty, Defendants are unable to comply with their fiduciary duties and prosecute this action. They are in a position of irreconcilable conflict of interest in terms of the prosecution of this action and defending themselves in the securities fraud class action lawsuit brought under the Securities Exchange Act of 1934.

82. Additionally, each of the Director Defendants received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

**The Director Defendants Are Not Independent or Disinterested**

**Defendant Riga**

83. Defendant Riga is and has been the Company's President, CEO, and member of the Board since January 2022. Previously, Defendant Riga served as the Company's Chief Commercial and Chief Operating Officer. In his role as Chief Operating Officer for fiscal years 2018, 2019, and 2020, Defendant Riga received $5,299,288, $3,817,961, and $2,522,799 in total compensation respectively. Further, in connection with his new role as the Company's CEO, Defendant Riga will receive an annual salary $650,000 and will be entitled to an annual discretionary bonus of up to 70% of his base salary, as determined by the Board. The Company does not claim that Defendant Riga is an independent director and because his primary source of income and primary employment is his employment as CEO of Spectrum and his professional reputation is inextricably bound to his role at Spectrum, Defendant Riga is incapable of acting independently and demand is futile upon him.

///

///

///

**Defendants Ashton, Brennan, Fischer, and Welles**

84. Demand is futile as to Defendants Ashton, Brennan, Fischer, and Welles as members of the Audit Committee during the Relevant Period for their knowing failure to fulfill their responsibilities.

85. The Board of Directors adopted an Audit Committee Charter, setting forth the responsibilities of the Audit Committee. The Audit Committee Charter notes that the purpose of the Audit Committee shall be to "assist the Board in its general oversight of the Company's accounting and financial reporting processes, audits of the financial statements, internal control and audit functions, and compliance with legal and regulatory requirements."

86. Upon information and belief, in their capacity as members of the Audit Committee, these Defendants were privy to specific information related to the Company's business, operations, and prospects, which would reasonably put them on notice that the statements set forth above in the Company's public filings were materially false and misleading when made.

87. The Company's public filings concerning the Company's business and prospects during the Relevant Period contained materially misleading information and/or omitted material information. In their capacity as members of the Audit Committee, these Defendants were charged with ensuring that these reports did not contain such materially misleading information. By allowing documents to be filled with misleading information, these Defendants face a sufficiently significant likelihood of liability so as to render them interested. Accordingly, Defendants Ashton, Brennan, Fischer, and Welles (as members of the Audit Committee) cannot adequately independently consider a demand.

**FIRST CAUSE OF ACTION**

**(Against Defendants For Breach Of Fiduciary Duties)**

88. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

89. Defendants owe the Company fiduciary obligations. By reason of their fiduciary relationships, Defendants owed and owe the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

90. Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

91. Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, Defendants breached their fiduciary duties of loyalty and good faith by allowing the Company to improperly misrepresent the Company's publicly reported financials. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

92. As a direct and proximate result of Defendants' failure to perform their fiduciary obligations, the Company has sustained significant damages. As a result of the misconduct alleged herein, Defendants are liable to the Company.

93. As a direct and proximate result of Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs associated with defending securities lawsuits, severe damage to the share price of the Company, resulting in an increased cost of capital, the waste of corporate assets, and reputational harm.

**SECOND CAUSE OF ACTION**

**(Against Defendants for Gross Mismanagement)**

94. Plaintiff incorporates by reference and re-alleges each allegation contained above, as though fully set forth herein.

95. By their actions alleged herein, Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of the Company in a manner consistent with the operations of a publicly held corporation.

96. As a direct and proximate result of Defendants' gross mismanagement and breaches of duty alleged herein, the Company has sustained significant damages in excess of millions of dollars.

97. Because of the misconduct and breaches of duty alleged herein, Defendants are liable to the Company.

**THIRD CAUSE OF ACTION**

**(Against Defendants For Abuse Of Control)**

98. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

99. Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence the Company, for which they are legally responsible.

100. As a direct and proximate result of Defendants' abuse of control, the Company has sustained significant damages. As a direct and proximate result of Defendants' breaches of their fiduciary obligations of candor, good faith, and loyalty, the Company has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, Defendants are liable to the Company.

101. The acts and omissions of Defendants complained of in this Count have been undertaken willfully, knowingly, and maliciously, and/or with reckless disregard for their respective civil obligations, and accordingly the Company is entitled to recover punitive damages with respect to this Count.

**FOURTH CAUSE OF ACTION**

**(Against Defendants For Unjust Enrichment)**

102. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

103. During the Relevant Period, Defendants received bonuses, stock options, and/or similar such compensation from the Company that were tied to the financial performance of the Company. Defendants were unjustly enriched thereby.

104. To remedy the Defendants' unjust enrichment, this Court should order them to disgorge their unjustly obtained bonuses and compensation.

105. The acts and omissions of Defendants complained of in this Count have been undertaken willfully, knowingly, and maliciously, and/or with reckless disregard for their respective civil obligations, and accordingly the Company is entitled to recover punitive damages with respect to this Count.

## FIFTH CAUSE OF ACTION

**(Against Defendants Turgeon, Gustafson, and Lebel For Contribution Under Sections 10(b) and 21D of the Exchange Act)**

106. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

107. Spectrum and Defendants Turgeon, Gustafson, and Lebel are named as defendants in the Securities Class Action, which asserts claims under the federal securities laws for violations of Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder. If and when the Company is found liable in the Securities Class Action for these violations of the federal securities laws, the Company's liability will be in whole or in part due to Defendants Turgeon, Gustafson, and Lebel's willful and/or reckless violations of their obligations as officers of Spectrum.

108. These Defendants, because of their positions of control and authority were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of the Company, including the wrongful acts complained of herein and in the Securities Class Action.

109. Accordingly, Defendants Turgeon, Gustafson, and Lebel are liable under 15 U.S.C. § 78j(b), which creates a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u- 4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

///

110. As such, the Company is entitled to receive all appropriate contribution or indemnification from Defendants Turgeon, Gustafson, and Lebel.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment as follows:

A. Determining that this action is a proper derivative action maintainable under law, and that demand is excused;

B. Awarding, against all Defendants and in favor of the Company, the damages sustained by the Company as a result of Defendants' breaches of their fiduciary duties;

C. Directing the Company to take all necessary actions to reform and improve its corporate governance and internal procedures, to comply with the Company's existing governance obligations and all applicable laws and to protect the Company and its investors from a recurrence of the damaging events described herein;

D. Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E. Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 9, 2022

Respectfully submitted,

**MATTHEW L. SHARP, LTD.**

/s/ Matthew L. Sharp

Matthew L. Sharp.
432 Ridge St.
Reno, NV 89501
Phone: (775) 324-1500
Email: matt@mattsharplaw.com

Gregory M. Egleston
**GAINEY McKENNA & EGLESTON**
440 Park Avenue South, 5th Floor
New York, New York 10016
Phone: (212) 983-1300
Fax: (212) 983-0383
Email: gegleston@gme-law.com
***Counsel for Plaintiff***

## VERIFICATION

I, MEHMET ALI ALBAYRAK, declare that I have reviewed the Verified Shareholder Derivative Complaint ("Complaint") prepared on behalf of Spectrum Pharmaceuticals, Inc. and authorize its filing. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true. I further declare that I am a current holder, and have been a holder, of Spectrum Pharmaceuticals, Inc. common stock at all relevant times.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on June 8th, 2022.

M. Albayrak

MEHMET ALI ALBAYRAK